STROUD, Judge.
 

 *586
 
 Father appeals from an order granting Mother's "motion to deny" his motion to modify custody. Because the trial court must consider the allegations of Father's motion for modification of custody as true, it erred by dismissing Father's motion for failure to state a claim upon which relief could be granted. The trial court considered matters outside of the pleadings, evidence, and record to make a determination that it would deny Father's motion if a hearing were held. We therefore must reverse the trial court's order and remand for a hearing on Father's motion.
 

 I. Background
 

 This case arises out of a prolonged dispute between Mother and Father. They have one child, and custody of that child is the subject of this appeal. A permanent custody trial was held in January 2017
 
 [1]
 
 before the Honorable Alicia D. Brooks. Judge Brooks announced her ruling at the end of the trial, but the Permanent Custody Order was not entered until 29 March 2017; the findings were necessarily based upon the evidence presented and circumstances existing in January 2017. One of the primary factual issues in the trial was the parties' difficulties in sharing physical custody of the child. In particular, Father was employed by
 
 *587
 
 Skechers, and his work required him to travel out of town frequently-over 100 nights per year in 2015, and approximately 40 nights in 2016, and Father anticipated traveling the same amount in 2017. Because his travel schedule was irregular, he often requested to change existing plans for visitation, while Mother wanted to keep a regular visitation schedule. The parties' communications about the schedule changes were often acrimonious. The Permanent Custody Order awarded Mother primary physical and legal custody and set out a detailed secondary custodial schedule for Father.
 

 Father filed a motion to modify the Permanent Custody Order on 18 April 2017 and Mother filed a "motion to deny" and for Rule 11 sanctions on 5 May 2017. Father filed a reply on 26 May 2017 and also requested sanctions and attorney's fees. On 19 June 2017, the Honorable Sean P. Smith held a hearing on several pending motions, including a motion for a Temporary Parenting Arrangement.
 
 [2]
 
 Father presented testimony during this portion of the hearing. After Father's testimony, near the end of the hearing, the trial court took up the issue of the "motion to deny" Father's motion for modification of custody. Without hearing further evidence regarding the allegations of the motion to modify, the trial court considered the motion based upon the pleadings and arguments of counsel. Judge Smith did not rule on the motion to deny during the hearing but indicated that he wanted to talk to Judge Brooks before making his ruling. Later on 19 June 2017, the trial court indicated via email that he was granting Mother's "motion to dismiss." The trial court's order granting Mother's motion was entered on 22 September 2017, and Father timely appealed.
 

 II. Jurisdiction
 

 Father's brief states that the ground for appellate review is:
 

 Judge Smith's 20 September 2017 Order, granting Plaintiff's Motion to Deny Defendant's
 
 *493
 
 Motion for Modification of Child Custody is a final judgment. Appeal therefore lies with the Court of Appeals pursuant to N.C. Gen. Stat. § 7A-27(b)(2).
 

 Mother argues Father's appeal should be dismissed as interlocutory because "claims for PSS, alimony, and equitable distribution indisputably remain pending for resolution below." Mother is correct that there
 
 *588
 
 are other pending claims in the same action, but
 
 N.C. Gen. Stat. § 50-19.1
 
 permits this appeal:
 

 Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment adjudicating a claim for absolute divorce, divorce from bed and board,
 
 child custody
 
 , child support, alimony, or equitable distribution if the order or judgment would otherwise be a final order or judgment within the meaning of G.S. 1A-1, Rule 54(b), but for the other pending claims in the same action.
 

 N.C. Gen. Stat. § 50-19.1
 
 (2017) (emphasis added). The trial court's order "would otherwise be a final order ... within the meaning of G.S. 1A-1, Rule 54(b)" because it is a final determination of the custody claim. Accordingly, the trial court's 22 September 2017 order is reviewable.
 

 III. Standard of Review
 

 The parties disagree on whether Mother's "motion to deny" was a motion to dismiss or a motion for summary judgment. The "motion to deny" did not cite to any Rule of Civil Procedure and did not identify any specific legal basis for denial of the motion to modify. The trial court did not indicate that it considered matters outside the pleadings, so it did not treat the motion as a motion for summary judgment. See
 
 Carolina Bank v. Chatham Station, Inc.
 
 ,
 
 186 N.C. App. 424
 
 , 427,
 
 651 S.E.2d 386
 
 , 388 (2007). This Court has stated that "[d]ismissal of a motion to modify child support when only the allegations in the motion and the court file are considered by the trial court is a summary procedure similar to judgment on the pleadings."
 
 Devaney v.
 

 Miller
 
 ,
 
 191 N.C. App. 208
 
 , 212,
 
 662 S.E.2d 672
 
 , 675 (2008). "A trial court's ruling on a motion for judgment on the pleadings is subject to
 
 de novo
 
 review on appeal."
 
 Samost v. Duke Univ.
 
 ,
 
 226 N.C. App. 514
 
 , 517,
 
 742 S.E.2d 257
 
 , 259 (2013),
 
 aff'd
 
 ,
 
 367 N.C. 185
 
 ,
 
 751 S.E.2d 611
 
 (2013).
 

 [T]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.
 

 Id.
 

 *589
 
 Here, Wife's "motion to deny" simply denied the allegations of Father's motion and alleged that there had been no substantial change of circumstances since entry of the Permanent Custody Order. At the end of the hearing, the trial court stated it was considering the motion as a motion to dismiss "for essentially failing to state a claim upon which relief may be granted" which refers to the standard set by N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). The trial court's order on appeal did not include any findings of fact but states as the basis for its ruling as follows:
 

 Defendant/Father's Motion for Modification of Child Custody fails to allege any substantial change in circumstance affecting the welfare of the minor child as required by N.C.G.S. § 50-13.7, fails to show a genuine issue as to any material fact, and should be denied.
 

 Since the parties treated the "motion to deny" as a motion to dismiss under Rule 12(b)(6), and the trial court also treated it as such, we will treat the trial court's order on the "motion to deny" as an order dismissing Father's motion under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). But whether considered as a motion for judgment on the pleadings or as a motion to dismiss under Rule 12(b)(6), our standard of review is the same: we review the ruling
 
 de novo
 
 and we consider Father's allegations in the motion to modify "as true" and determine whether the allegations "are sufficient to state a claim upon which relief may be granted under some legal theory."
 

 *494
 

 Newberne v. Dep't of Crime Control & Pub. Safety
 
 ,
 
 359 N.C. 782
 
 , 784,
 
 618 S.E.2d 201
 
 , 203 (2005).
 

 IV. Substantial Change of Circumstances
 

 "It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody."
 
 Shipman v. Shipman
 
 ,
 
 357 N.C. 471
 
 , 473,
 
 586 S.E.2d 250
 
 , 253 (2003) (quotation marks omitted).
 

 The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered. If, however, the trial
 
 *590
 
 court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order.
 

 Id.
 
 at 474,
 
 586 S.E.2d at 253
 
 .
 

 Father's motion for modification of child custody alleged that his work schedule was a significant factor in the prior order's determination of custody and visitation. The evidence at the January 2017 hearing showed that Father traveled over 100 nights per year in 2015 and approximately 40 nights in 2016 and Father anticipated traveling the same amount in 2017, and, as a result, the parties had great difficulty in communicating and arranging changes to the custody schedule. Judge Brooks announced her ruling at the end of the January hearing and as to Father's travel schedule, she stated:
 

 That because of his work schedule, the father has -- does -- had limited -- had limitations on his contact because of his work schedule; that he was -- did travel -- does continue to travel quite a bit as a result of his position; that it was the decision throughout the decision that mom would be a stay-at-home mom and therefore that was an agreement that the parties had.
 

 The written order was not entered until 29 March 2017. Based upon the evidence presented in January 2017, the trial court made the following findings regarding Father's work schedule and availability of both parents to care for the child:
 

 8. During the marriage, Defendant/Father regularly travelled for work.
 

 9. Because of his travel schedule, Defendant/father had some limitations on his contact with the minor child during the marriage.
 

 10. After the date of separation, Defendant/Father obtained a new position with his employer that allowed him to travel less frequently. However, Defendant/Father continues to travel on a somewhat varying schedule.
 

 11. Since the date of separation, the parties have had extreme difficulty agreeing on a physical custody schedule.
 

 *591
 
 Plaintiff/Mother desired a set schedule that would provide stability and structure for the minor child. Defendant/Father refused to agree to a set schedule and demanded a flexible, month-to-month custody schedule in accordance with his travel schedule.
 

 12. The parties have been unable to effectively co-parent and communicate with one another since the date of separation on a myriad of issues pertaining to the minor child.
 

 13. To avoid conflict, Plaintiff/Mother often acquiesced to Defendant/Father's demands for a month-to-month, joint custody schedule.
 

 14. Prior to the date of separation, Plaintiff/Mother enrolled the minor child in therapy in anticipation of the issues that arise with separation and custodial transitions. Plaintiff/Mother had concerns due to particular behavior exhibited by the minor
 
 *495
 
 child which suggested she may be struggling to adjust to the schedule.
 

 ....
 

 17. The minor child thrives on structure and consistency and it is in her best interests to have a set custodial schedule and a primary residence with limited custodial transitions.
 

 18. Plaintiff/Mother has been the minor child's primary caregiver and the parent primarily responsible for attending to the minor child's physical, emotional, psychological, and educational needs for the majority of the minor child's life.
 

 The Primary Custody Order's decree set forth a detailed schedule of regular alternate weekend and holiday visitation for Father and also included provisions to address his potential unavailability due to his travel schedule:
 

 6. If changes are needed in the regular schedule, arrangements will be made in advance and will be mutually agreed upon by both parties. In the event that both parties cannot agree to a proposed change, the schedule set forth herein will remain in effect.
 

 7. In the event Defendant/Father must travel or be otherwise unavailable for more than twenty four (24) hours
 
 *592
 
 during his custodial time, he shall first offer Plaintiff/Mother the right of first refusal to care for the minor child with advance notice to Plaintiff/Mother as soon as possible before allowing a third-party to care for the minor child.
 

 In his motion for modification of custody, Father alleged several factors as substantial changes of circumstances affecting the best interests of the child which would justify modification of the order, but the most salient factor he alleged was the change in his employment status and thus availability to care for the child:
 

 11. Since Her Honor's Ruling on January 6, 2017, granting Mother primary physical and legal custody of the minor child, there has been a substantial and material change in circumstances affecting the welfare of the minor child, so as to authorize this Court to modify the Order. Specifically, but not limited to the following, Father shows unto the Court as follows:
 

 a. Since Her Honor's Ruling, Father's position with Skechers U.S.A., Inc., has been dissolved, thereby terminating Father's employment with Skechers U.S.A., Inc. As such, Father is no longer required to travel. Father is therefore available and able to care for the minor child on an equal basis with Mother.
 

 Father also alleged Mother was having difficulty in getting off work to care for the child, and she was struggling with her role as primary custodian:
 

 f. Upon information and belief, Mother has, and will continue to struggle with being the minor child's primary custodian. Father shows unto the Court as follows:
 

 i. Rather than Mother caring for the minor child while the minor child is in her care, Mother has asked Father on numerous occasions since Her Honor's Ruling to take the minor child to various appointments, care for the minor child when she was sick, and the like. While Father has been more than happy and willing to assist in caring for the minor child's every need, on the rare occasion when Father could not accommodate Mother's requests, Mother has expressed her frustration to Father when he was unable to care for the minor child during Mother's custodial time.
 

 *593
 
 ii. Further, Mother has already utilized the majority of her paid time off (PTO). In short, Mother has complained to Father that once her PTO is exhausted, Mother will lose approximately Two-Hundred Dollars ($200.00 USD) per day, which will ultimately trickle down and have a potentially negative impact on the minor child. Upon information and belief, and as a result of said financial consequence, Mother has expressed her frustration to Father on the rare occasion when Father was unable to oblige Mother's request(s).
 

 12. As a result of Father's unemployment, many of the factual circumstances existing at the time of the Court's Ruling are no longer applicable.
 

 *496
 
 In response to Father's motion for modification, Mother filed a "Motion to Deny and Motion for Sanctions." She alleged that Father's motion was filed "just twenty (20) days after" the Permanent Custody Order was entered. She also alleged Father's Motion "fails to allege any substantial change in circumstances affecting the welfare of the child warranting the modification of the Order," and that his motion was not grounded in fact or warranted by existing law. She requested denial of Father's motion and sanctions under Rule 11.
 

 Mother emphasizes the brief time since the custody order was entered, as she did below, arguing that Father's motion to modify was filed only 20 days after entry of the Permanent Custody Order and that it was simply too soon for there to have been any substantial change in circumstances. Essentially, she argues that the date of entry of the order controls. But Mother's argument ignores the fact that the Permanent Custody Order was based upon the evidence and circumstances existing as of January 2017. It is unfortunately not unusual for there to be a substantial delay between a hearing and the entry of a written order based on that hearing. Since the trial court can consider only the evidence presented at the hearing, it is impossible for the trial court to consider changes in circumstances after the close of the hearing but before the entry of the written order.
 
 Crews v. Paysour
 
 , --- N.C. App. ----, ----,
 
 821 S.E.2d 469
 
 , 472 (2018) ("The order ... can address only the facts as of the last date of the evidentiary hearing because that is the only evidence in the record."). Thus, the relevant dates for determining whether a change of circumstances has occurred is from the date of the hearing in January 2017, to the date the motion to modify was filed, 18 April 2017.
 

 *594
 
 Further, the length of time that has passed after entry of a custody order, standing alone, does not control whether there may have been a substantial change of circumstances.
 
 See
 

 N.C. Gen. Stat. § 50-13.7
 
 (a) (2017) ("Subject to the provisions of G.S. 50A-201, 50A-202, and 50A-204, an order of a court of this State for custody of a minor child may be modified or vacated
 
 at any time
 
 , upon motion in the cause and a showing of changed circumstances by either party or anyone interested." (emphasis added) ). Some major changes in the life of the parents or child may take place very suddenly, such as onset of a serious illness, injury in an accident, or loss of a job. Some changes may happen more slowly. But the
 
 timing
 
 of the change in circumstances does not determine as a matter of law whether it is substantial or whether it has an effect on the welfare of the child.
 
 See
 
 id.
 

 In this case, the circumstance in question was Father's job and the effect of his work travel schedule on his availability to care for the child.
 

 Based upon the findings of the Permanent Custody Order, Father's travel schedule was a significant factor in the trial court's decision. We must base our determination upon the record and transcript before us, and the Permanent Custody Order has findings which are the basis for the custody arrangement. But we note that the trial court informed the parties that it would take the ruling under advisement to consult Judge Brooks to see how much impact Father's travel schedule had on her decision in the Permanent Custody Order:
 

 THE COURT: Right. Okay. Let me make it clear to everyone, this is my decision, okay, I'll be deciding this issue whether to grant this motion to dismiss the motion to modify filed by Mr. Stern. That said, I think it is also appropriate that I confer with Judge Brooks because she's the one who heard this custody case, and she made this decision that two months and 23 days after she announced her decision in court a motion to modify was filed. So I'm going to talk to her. I'm going to hear what she has to say about the case and about this allegation of the move or just I guess granted to be true, that this loss of employment by Mr. Stern and what effect that had, if it were to occur in the future, had upon her analysis of the case. But, ultimately, I'm just going to hear from her, I'm going to talk to her in chambers, and I'm going to make the decision about whether legally this motion to modify should proceed or it should be dismissed
 
 *497
 
 for essentially failing to state a claim upon which relief can be granted.
 

 *595
 
 We first note that this Court can review the order only based upon the record before us, and whatever Judge Brooks may have told Judge Smith about her impressions of the case is simply not before us. We also note that the trial court is required to rule upon the evidence and arguments presented at the hearing. The trial court did not take the allegations of Father's motion for modification as true. Instead, the trial court determined the credibility and weight of Father's allegations based upon its outside discussion with Judge Brooks. In deciding a motion to dismiss under Rule 12(b)(6), the trial court does not have the authority to judge the credibility and merits of the allegations, nor does this Court have the authority to conduct
 
 de novo
 
 review based upon any information outside the record.
 
 See
 

 Hensey v. Hennessy
 
 ,
 
 201 N.C. App. 56
 
 , 67-68,
 
 685 S.E.2d 541
 
 , 549 (2009) ("Although we appreciate the trial court's concern for judicial economy, a judge's own personal memory is not evidence. The trial court does not have authority to issue an order based solely upon the court's own personal memory of another entirely separate proceeding, and it should be obvious that the evidence which must be taken orally in open court must be taken
 
 in the case which is at bar
 
 , not in a separate case which was tried before the same judge." (quotation marks omitted) ).
 

 Taking the allegations of Father's motion as true and in conjunction with the findings of fact in the Permanent Custody Order, Father was working for Skechers at the time of the prior hearing and was traveling out of town frequently for his work. His travel schedule was irregular, and he and Mother had serious difficulties in communicating and making arrangements for changes in the child's schedule, to the child's detriment. According to the Permanent Custody Order, Father's work schedule was a significant factor in the custodial schedule. Mother denies this, but the Permanent Custody Order's findings indicate otherwise, and our review is limited to determining whether Father's motion was "sufficient to state a claim upon which relief may be granted under some legal theory."
 
 Newberne
 
 ,
 
 359 N.C. at 784
 
 ,
 
 618 S.E.2d at 203
 
 .
 

 We understand that the trial court's motives were good: judicial economy and avoidance of another custody hearing with its inevitable emotional and financial costs to both parties as well as the child. As the trial court stated,
 

 [L]et's address it now and get to this issue as opposed to a hearing where at the end of your evidence on the motion to modify after a day, two days worth of evidence, I sit there and I say what I could have said here today.
 

 *596
 
 Perhaps the trial court would have made the same decision after a full hearing, and perhaps will make the same decision on remand, but any trier of fact, judge or jury, must keep an open mind and consider the evidence and arguments presented by each party before making a decision. The trial court can dismiss a motion under Rule 12(b)(6) only if the motion to modify has not stated any facts or law which could support the claim, and here, Father's motion to modify did allege at least one substantial change of circumstances which would directly affect the child by entirely changing his availability to care for the child. The trial court may ultimately determine that other factors outweigh the change in Father's availability, but this factual issue cannot be decided on a motion to dismiss under the standards set by Rule 12(b)(6).
 

 Taking all of his allegations as true and considering the findings of fact in the Permanent Custody Order, Father's work schedule was an important factor in the Permanent Custody Order's provisions regarding physical custody and the visitation schedule. In addition, Father's availability to care for the child could certainly affect the welfare of the child. After a hearing on the merits, the trial court may make the same decision, but that decision must be based upon appropriate findings of fact and conclusions of law. We need not address Father's remaining argument since we must reverse on his first issue.
 

 V. Conclusion
 

 For the foregoing reasons we reverse the trial court's order dismissing Father's motion for modification of custody, and we remand
 
 *498
 
 to the trial court to hold a hearing on the merits of his motion.
 

 REVERSED AND REMANDED.
 

 Judges DIETZ and MURPHY concur.
 

 [1]
 

 The transcript of the custody hearing states the hearing was held on 16 January 2017. The Permanent Custody Order and parties' briefs state the hearing was held on 6 January 2017. The date of the hearing does not make a difference for this appeal, but the trial court should base its determination of the change of circumstances from the actual date of the January custody hearing.
 

 [2]
 

 The parties also had pending issues of equitable distribution, post separation support, and alimony.